LINDSAY KUKONA PAKELE        10242
DANIEL J. O'MEARA            9890
LEGAL AID SOCIETY OF HAWAI'I
924 Bethel Street
Honolulu, HI 96813
Telephone:  (808) 536-4302
Facsimile:   (808) 527-8088
dan.omeara@legalaidhawaii.org
lindsay.kukonapakele@legalaidhawaii.org

Attorneys for Plaintiff
AJA NOZAKI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| AJA NOZAKI, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT; EXHIBIT 1; |
| | ) | SUMMONS |
| vs. | ) | |
| | ) | |
| TRAM'S LLC; and TRAM NGOC | ) | |
| NGO, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>COMPLAINT</u>**

**INTRODUCTION**

1.     This is an action brought by Plaintiff AJA NOZAKI ("Plaintiff" or "Ms. Nozaki"), a nail technician apprentice, seeking recovery of unpaid regular and overtime wages, unpaid credit card tips and illegal deductions for mandatory

trainings by her employers, Defendants TRAM'S LLC ("Defendant Tram's LLC") and TRAM NGOC NGO ("Defendant Ngo").

2.      Throughout Plaintiff's employment with Defendants, Plaintiff was regularly not paid minimum wage and overtime, and was not timely paid for the hours she worked.  Additionally, Plaintiff was not paid any of her credit card tips nor for training time.  Defendants also made illegal deductions by requiring Plaintiff to pay for mandatory trainings.

3.      Throughout Plaintiff's employment, Defendants also failed to comply with Hawai'i's legally-mandated pay rate notice, pay stub and record-keeping requirements.

## I.      JURISDICTION AND VENUE

4.      Plaintiff brings this action individually, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").  Plaintiff has consented in writing to be a party to the FLSA claims asserted in this action, and Plaintiff's signed consent form is attached as Exhibit 1.

5.      This court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 215(a)(2), 29 U.S.C. § 216(b), 29 U.S.C. § 202(a), and 28 U.S.C. § 1337.

6.     Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

7.     This court has supplemental jurisdiction over Plaintiff's claims brought under Hawai'i law pursuant to 28 U.S.C. § 1367(a).  Plaintiff's state law claims form part of the same case or controversy as Plaintiff's federal claims.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Hawai'i.

## II.     PARTIES

### A.  Plaintiff

9.      Plaintiff was employed by Defendants from August 23, 2016 through June 21, 2017.

10.      Plaintiff is an adult individual who resides in Hilo, Hawai'i.

11.     At all times relevant to this action, Plaintiff was over the age of 20 when she was employed by Defendants.

12.     At all times relevant to this action, Plaintiff was an "employee" of the Defendants as defined in the FLSA, 29 U.S.C. § 203(e)(1) and the Hawai'i Wage and Hour Law, Hawai'i Revised Statutes § 387-1 and Hawai'i Administrative Rules § 12-20-1.

13.     At all times relevant to this action, Plaintiff was an employee "engaged in commerce" or "working on goods or materials that have been moved in or produced for commerce by any person" while working for the Defendants as defined in 29 U.S.C. § 203(s).

14.     Plaintiff has agreed and consented in writing to be a party plaintiff in this action as required by 29 U.S.C. § 216(b).

**B.  Defendants**

15.     Defendant Tram's LLC d.b.a. Tram's Day Spa offers complete salon and spa services and also has a beauty school with its principal place of business at 1261 Kilauea Avenue, Suite 220, Hilo, Hawai'i 96720.

16.     Defendant Tram's LLC regularly conducts business in Hawai'i County, Hawai'i within the jurisdiction of this court.

17.     At all times relevant to this action, Defendant Tram's LLC was an "employer" and employed Plaintiff as defined in 29 U.S.C. §§ 203(d) and 203(g) and Hawai'i Revised Statutes § 387-1 and Hawai'i Administrative Rules § 12-20-1.

18.     Upon information and belief, at all times relevant to this action, Defendant Ngo was the owner of Defendant Tram's LLC.

19.     Upon information and belief, at all times relevant to this action, Defendant Ngo was an individual engaged in business in Hawai'i County, Hawai'i.

20.     Upon information and belief, at all times relevant to this action, Defendant Ngo was an "employer" and employed Plaintiff as defined in 29 U.S.C. §§ 203(d) and 203(g) and Hawaiʻi Revised Statutes § 387-1 and Hawaiʻi Administrative Rules § 12-20-1.

21.     At all times relevant to this action, Defendant Ngo exercised operational control over significant aspects of the day-to-day functions of Defendant Tram's LLC.

22.     At all times relevant to this action, Defendant Ngo actively managed, supervised, and directed Defendant Tram's LLC's business operations.

23.     At all times relevant to this action, Defendant Ngo exercised control over the terms of Plaintiff's employment including hiring and firing decisions, Plaintiff's work schedules, and the rate and method of employee payment.

24.     At all times relevant to this action, Defendant Ngo exercised control over the maintenance of employment records.

25.     At all times relevant to this action, Defendant Ngo acted directly and indirectly in Defendant Tram's LLC's interest in relation to its employees, including Plaintiff.

26.     Defendants are an "enterprise engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. §§ 203(s), 206(a), and 207(a).

27.    Upon information and belief, Defendants' annual gross volume of sales made or business done was not less than $500,000 in the past fiscal year.

### III.   STATEMENT OF FACTS

28.    Defendant Ngo hired Ms. Nozaki to work as a nail technician apprentice at Tram's Day Spa from August 23, 2016 to June 21, 2017.

29.    Tram's Day Spa is a salon, spa and beauty school located in Hilo, Hawai'i.

30.    Upon information and belief, Defendant Tram's LLC had three employees on payroll, from one to three apprentices (including Ms. Nozaki) and from four to ten students during the time period Ms. Nozaki was employed.

31.    Ms. Nozaki was employed by Defendants for almost ten months, from August 23, 2016 to June 21, 2017.

32.    When she was hired, Ms. Nozaki agreed to work as Defendants' apprentice in exchange for tuition, tips, and commissions, not knowing she had rights to be paid minimum wage and overtime under the state and federal wage and hour law.

33.    Ms. Nozaki was required to sign an "Enrollment Agreement for Tram's LLc school of cosmetology," which states that a student must pay $4,000 in tuition for the nail program and $6,000 in tuition for the esthetician program and also complete the required 350 hours as a nail technician and 600 hours as a esthetician

for the Hawai'i state board.  The agreement requires students to pay a minimum of $50 per training class and a $100 insurance fee.

34.     As part of her employment, Ms. Nozaki was required to complete four, 3-hour mandatory training sessions on August 24, 2016, September 7, 2016, September 13, 2016, and September 20, 2016 and was required to pay $50 for each session.

35.     From September 26, 2016 through December 5, 2016, Ms. Nozaki regularly worked from 10:45 a.m. until 4:45 p.m., between two to four days a week.

36.     On September 30, 2016, Ms. Nozaki was required to attend a mandatory event for 3 hours without compensation.

37.     On October 4, 2016, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

38.     On October 16, 2016, Ms. Nozaki was required to attend a mandatory training and event for 4 hours without compensation.

39.     On October 27, 2016, Ms. Nozaki was required to attend a mandatory event for 3 hours without compensation.

40.     On October 29, 2016, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

41.     On November 1, 2016, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

42.     On November 8, 2016, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

43.     On November 26, 2016, Ms. Nozaki was required to attend a mandatory meeting for one hour without compensation.

44.     On December 6, 2016, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

45.     In December 2016, Ms. Nozaki's hours at the salon increased at the same time that her partner lost his overtime income, and Ms. Nozaki needed to earn money to pay for her bills.

46.     Ms. Nozaki told Defendant Ngo that she could not work 40 hours a week without pay so she needed to get another job and change her availability.

47.     Defendant Ngo did not want Ms. Nozaki to reduce her hours so she asked Ms. Nozaki how much money she needed to earn monthly.

48.     Ms. Nozaki explained that her bills alone were $900 per month.

49.     Defendant Ngo asked if Ms. Nozaki would work full time for $900 per month.

50.     Ms. Nozaki agreed because she was unaware that she had the right to be paid minimum wage and overtime as an apprentice.

51.     From December 12, 2016 through March 8, 2017, Ms. Nozaki's regular work hours were from 8:30 or 8:45 a.m. to 4:45 p.m., three to five days a week.

52.     Although Ms. Nozaki recorded 9:00 a.m. as her start time for this time period, she regularly came to work between 8:30 to 8:45 a.m. to complete her cleaning and setting up duties.

53.     On December 23, 2016, Defendant Ngo registered Ms. Nozaki as an apprentice with the Board of Barbering and Cosmetology at the Professional and Vocational Licensing Division within the State of Hawai'i's Department of Commerce and Consumer Affairs.

54.     On January 10, 2017, Ms. Nozaki was required to attend a mandatory training for 3 hours without compensation.

55.     On February 6, 2017, Ms. Nozaki was required to attend a mandatory training for 2 hours without compensation.

56.     On February 13, 2017, Ms. Nozaki was required to attend a mandatory training for 2 hours without compensation.

57.     On February 20, 2017, Ms. Nozaki was required to attend a mandatory training for 2 hours without compensation.

58.     On February 28, 2017, Ms. Nozaki was required to attend a mandatory training for 2 hours without compensation.

59.     From March 9, 2017 through May 10, 2017, Ms. Nozaki was out on medical leave related to complications with her pregnancy.

9

60.     During her medical leave, Ms. Nozaki did alterations for customers on March 9, 2017, March 10, 2017, March 13, 2017, and March 16, 2017.

61.     On May 11, 2017, Ms. Nozaki returned to work and for the first few days, she often worked from 8:30 or 8:45 a.m. to 3 p.m.

62.     From May 17, 2017 to June 21, 2017, Ms. Nozaki resumed her regular work schedule from 8:30 or 8:45 a.m. to 4:45 p.m., between three to five days a week.

63.     Ms. Nozaki's job duties included doing manicures and pedicures; tailoring clothes; customer service such as answering phones, scheduling, and processing customer payments and credit card transactions; preparing waxing supplies; opening the salon; cleaning and sanitizing the salon; cleaning two nail tables, four pedicure chairs, and two spa rooms; ordering salon supplies; folding laundry; running errands; and, picking up Defendant Ngo's children from school.

64.     Outside of their regular schedules and before the beginning of the work day, employees and apprentices at Tram's Day Spa were expected to clean, set up their work stations, and sanitize equipment and tools.

65.     On June 21, 2017, Ms. Nozaki contacted the Board of Barbering and Cosmetology and spoke to Ms. Laureen Kai who told her that it is illegal for employers to charge employees for apprenticeship classes and training and that employers are required to pay apprentices the state minimum wage.

10

66.    Ms. Kai advised Ms. Nozaki to contact the Department of Commerce and Consumer Affairs, Regulated Industries Complaints Office (DCCA-RICO) and the Hawaiʻi State Department of Labor and Industrial Relations, Wage Standards Division (DLIR-WSD).    Both DCCA-RICO and DLIR-WSD confirmed that employers cannot charge apprentices for training and must comply with state minimum wage and overtime laws.

67.    Ms. Nozaki kept contemporaneous records of her work schedule in a calendar on her computer, which was also accessible on her phone.

68.    On June 22, 2017, Ms. Nozaki met with Defendant Ngo to inform her about her conversation with Ms. Kai and told Defendant Ngo that Ms. Kai had said that Defendant Ngo could not charge her for the apprenticeship and also told her she qualified to be paid minimum wage.

69.    Ms. Nozaki informed Defendant Ngo that she spoke with DCCA-RICO and DLIR-WSD.

70.    Ms. Nozaki also gave Defendant Ngo a copy of her work calendar with every hour she worked and the amounts she was paid.

71.    On June 22, 2017, Ms. Nozaki sent Defendant Ngo a letter in which she discussed her conversation with Ms. Kai and requested that Defendant Ngo acknowledge her as a paid employee/apprentice and provide her with tax forms, pay

stubs, back pay and the completed nail technician apprentice records for licensing and to wave all tuition charges.

72.     On July 8, 2017, Defendant Ngo sent Ms. Nozaki a letter demanding payment in the amount of $1,765.

73.     During Ms. Nozaki's time as an apprentice, she was paid $4681.

**A. Apprentices**

74.     In Hawaiʻi, unpaid apprentices working or performing services at a beauty shop are considered/deemed to be "employed" and must be paid at least the Hawaiʻi minimum wage and overtime at a rate of one and one-half their regular rate after forty hours of work in a calendar week.  State of Hawaiʻi, Department of Labor & Industrial Relations, Wage Standards Division, *NOTICE TO HAWAIʻI BARBER SHOPS AND BEAUTY SHOPS REGARDING THE USE OF UNPAID APPRENTICES* (Feb. 2017), https://labor.hawaii.gov/wsd/files/2017/02/Notice-to-Barber-Shops-2.2017.pdf.  Per the DLIR-WSD notice, apprentices who undergo the same training as new employees, function in the operations of the employer or are performing productive work are considered "permitted or suffered to work" and the fact that the apprentices may receive some benefits such as a new skill, improved work habits, or credit towards their licensing does not exclude them from the minimum wage or overtime requirements because the employer benefits and profits from the apprentice's work.

**B.  Unpaid Minimum Wage**

75.     Defendants failed to pay Ms. Nozaki at the mandatory minimum wage rate of $8.50 per hour for the 313.75 hours she worked in 2016, and $9.25 per hour for the 518.075 hours she worked in 2017, totaling $7,459.07 in unpaid minimum wages.

**C.  Unpaid Overtime**

76.     For the weeks of January 30, 2017, February 6, 2017, and February 27, 2017, Ms. Nozaki worked over 40 hours per week.  Defendants failed to pay Ms. Nozaki overtime for the three weeks she worked over 40 hours and she is owed $95.36 in overtime wages.

**D.  Unpaid Credit Card Tips**

77.     Ms. Nozaki was a tipped employee.   On average, she earned approximately $15 a day and up to a maximum of $75 per day in cash tips.

78.     Defendant Ngo would often not allow staff to finish the services on a client.  Instead, Defendant Ngo would force staff to let her finish with a client in order to make staff share tips.

79.     Ms. Nozaki was not paid any of her credit card tips.  Defendant Ngo retained all credit card tips for herself and Defendant Tram's LLC.

80.     Defendant Ngo told Ms. Nozaki that her earned credit card tips would be applied to the $4,000 for the nail program tuition.

81.     Ms. Nozaki estimates that about seventy percent of customers paid for their services by credit card.  Ms. Nozaki estimates conservatively that she is owed approximately $30 per day in credit card tips for each day she worked.  Defendants owe Ms. Nozaki $3,210 in unpaid credit card tips.

**E. Unpaid Training Hours**

82.     Defendant Ngo required all employees, apprentices, and students including Ms. Nozaki to attend mandatory training and classes.  Ms. Nozaki is owed $279.16 in unpaid training hours.

**F.  Illegal Deductions for Mandatory Trainings**

83.     Ms. Nozaki paid Defendants $50 each for the first four mandatory trainings.  As a result, Defendants owe Ms. Nozaki $200 in illegal deductions from Ms. Nozaki's wages for improperly requiring her to pay for the first four mandatory trainings.

**G.  Late Wages**

84.     Throughout her employment, Defendants failed to pay Ms. Nozaki her total wages and tips, on time and in full, on regular paydays.  Ms. Nozaki earned $7,554.43 in regular and overtime wages, $3,210 in unpaid credit card tips, and was subjected to $200.00 in illegal deductions but was paid only $4,681.

14

**H. Pay Notice, Pay Stub, and Recordkeeping Violations**

85.     Defendants failed to provide Ms. Nozaki with the rate of pay and her regular pay days in writing at the time she was hired, in violation of the Hawaiʻi law regarding pay notice.

86.     Defendants failed to provide Ms. Nozaki with a printed paystub for each of the pay periods she worked, in violation of Hawaiʻi law regarding pay stubs.

87.     Defendants failed to keep contemporaneous and accurate records of the hours Ms. Nozaki worked, her rate of pay, and the wages she was paid, in violation of Hawaiʻi law regarding employer's records.

## IV.  FIRST CAUSE OF ACTION
### (Fair Labor Standards Act)

88.     All prior allegations and averments in this Complaint above are incorporated herein by reference.

89.     Defendants willfully failed to pay Plaintiff minimum wage, in violation of 29 U.S.C. § 206(a)(1)(C) and its implementing regulations.

90.     Defendants willfully failed to pay Plaintiff overtime compensation at one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1) and its implementing regulations.

91.     Defendants' failure to pay Plaintiff the minimum wage and overtime was willful within the meaning of 29 U.S.C. § 255(a).

92.     Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover from Defendants, her unpaid minimum wages and unpaid overtime compensation and an additional equal amount as liquidated damages as well as reasonable attorney's fees and costs.

93.     Defendants willfully failed to comply with the FLSA tip credit provision, in violation 29 U.S.C. § 203(m) and its implementing regulations.

94.     Defendants failed to compensate Plaintiff for mandatory training time that was directly related to her job, contrary to 29 C.F.R. § 785.29.

## V.  SECOND CAUSE OF ACTION
### (Hawai'i Wage and Hour Law, Payment of Wages and Other Compensation under Hawai'i Law — Payment of Wages)

95.     All prior allegations and averments in this Complaint above are incorporated herein by reference.

96.     Defendants failed to pay Plaintiff minimum wage, in violation of Hawai'i Wage and Hour Law, H.R.S. §387-2(a), which was $8.50 per hour in 2016 and $9.25 per hour in 2017.

97.     Defendants failed to pay Plaintiff overtime compensation at one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of Hawai'i Wage and Hour Law, H.R.S. § 387-3(a).

16

98.    Defendants failed to comply with the Hawai'i Wage and Hour Law tip credit provision, in violation of H.R.S. § 387-2.

99.    Defendants retained Plaintiff's credit card tips, which were owed to her as part of her wages, in violation of H.R.S. § 388-6.

100.    Defendants made illegal deductions from Plaintiff's wages, including the mandatory trainings, in violation of H.R.S. § 388-6.

101.    Pursuant to H.R.S. §§ 387-12(b), Plaintiff is entitled to recover from Defendants, her unpaid minimum wages and unpaid overtime compensation and an additional equal amount as liquidated damages because of Defendants' willful violations as well as reasonable attorney's fees and costs.

102.    Pursuant to H.R.S. §§ 388-10(a), and 388-11(c), Plaintiff is entitled to recover from Defendants her unpaid wages, a sum equal to the amount of unpaid wages, and interest at a rate of six per cent per year from the date the wages were due; costs of the action, including costs of fees of any nature; and, reasonable attorney's fees.

## VI.  THIRD CAUSE OF ACTION
### (Hawai'i Wage and Hour Law, Payment of Wages and Other Compensation under Hawai'i Law – Pay Notice, Pay Stub, and Recordkeeping)

103.    All prior allegations and averments in this Complaint above are incorporated herein by reference.

104.   Defendants failed to pay Plaintiff at least twice a month on regular paydays designated in advance, in violation of H.R.S. § 388-2(a).

105.   Defendants failed to pay Plaintiff her earned wages within 7 days after the end of each pay period, in violation of H.R.S. § 388-2(b).

106.   Defendants failed to notify Plaintiff in writing, at the time of hire, of her rate of pay and pay days, in violation of H.R.S. § 388-7(1).  Defendants also failed to notify Plaintiff, in writing or through a posted, accessible notice, of any in changes in the pay rate or pay days, in violation of H.R.S. § 388-7(2).

107.   Defendants failed to provide Plaintiff, at every pay period, a written paystub with the employee's name; the employer's name, address and phone number; the regular and overtime hours worked; the regular and overtime wages paid; any other compensation or deduction; gross and net wages; and, the pay date, pay period, and, pay rate, in violation of H.R.S. § 387-6(c).

108.   Defendants failed to provide Plaintiff, at every payday, a written paystub showing the gross and net pay, deductions, pay date and pay period, in violation of H.R.S. § 388-7(4).

109.   Defendants failed to keep contemporaneous, true and accurate records of each employee's name, address, and occupation, wages paid each pay period, hours worked each day and workweek, and, the rate of pay, in violation of H.R.S. §§ 387-6(a) and 388-7(6).

## VII.  FOURTH CAUSE OF ACTION
### (In the alternative, Unjust Enrichment)

110.    All prior allegations and averments in this Complaint above are incorporated herein by reference.

111.    Defendants have been unjustly enriched by retaining the credit card tips that were due to Plaintiff as part of her compensation for performing nail services on clients, retaining money Plaintiff paid for mandatory trainings for which payment should not have been required, and otherwise not making wage payments that should have been made to Plaintiff.

112.    Plaintiff conferred a benefit upon Defendants by performing nail services for clients without Defendants properly compensating her for her labor, including not paying her the credit card tips she was owed for the services, not paying her minimum wage and overtime for the hours she worked and by requiring her to pay for mandatory trainings and not compensating her for attending the mandatory trainings.  The retention of said benefit would be unjust without reimbursement for the same.

113.    Accordingly, Plaintiff is entitled to restitution for Defendants' enrichment in an amount that the court may determine.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court grant the following relief:

a.  Declare that Defendants violated the FLSA and Hawai'i Wage and Hour law;

19

b.  Declare that Defendants' violations of the FLSA and Hawaiʻi Wage and Hour law were willful;

c.  Declare that Defendants violated Hawaiʻi law regarding Payment of Wages and Other Compensation, including unlawfully retaining the credit card tips that were owed to Plaintiff as part of her wages, and requiring her to pay for mandatory trainings;

d.  Grant judgment to Plaintiff against Defendants for Plaintiff's claims of unpaid minimum wage and overtime brought pursuant to FLSA and an equal amount in liquidated damages;

e.  Grant judgment to Plaintiff against Defendants for Plaintiff's claims of unpaid minimum wage and overtime brought pursuant to Hawaiʻi Wage and Hour law and an equal amount in liquidated damages;

f.  Grant judgment to Plaintiff against Defendants for Plaintiff's claims of unpaid wages, including unpaid credit card tips, pursuant to Hawaiʻi law regarding Payment of Wages and Other Compensation, and a sum equal to the amount of unpaid wages as well as interest at a rate of six per cent per year from the date the wages were due;

g.  Grant judgment for unjust enrichment as the court may determine;

h.  Award Plaintiff reasonable attorney's fees;

i.  Award Plaintiff costs;

20

j.  Award Plaintiff interest;

k.  Instruct Defendants to sign off on Plaintiff's recorded apprenticeship hours, complete the required apprenticeship paperwork, and submit those records to the Hawai'i State Board of Barbering and Cosmetology, which will authorize Plaintiff to take the test to acquire her nail technician license; and,

l.  Grant such further relief as the court finds just and equitable.


DATED:  Honolulu, Hawai'i, August 14, 2018.


_____/s/Lindsay Kukona Pakele_____
LINDSAY KUKONA PAKELE
DANIEL J. O'MEARA
Attorneys for Plaintiff
AJA NOZAKI